T.C. Memo. 1996-280

UNITED STATES TAX COURT

APOLLO OVERSEAS INTERNATIONAL, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5031-94.                    Filed June 17, 1996.

<u>James S. Yan</u>, for petitioner.

<u>Clifton B. Cates III</u> and <u>Nancy C. McCurley</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SCOTT, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income taxes and additions to tax for the
taxable years ended January 31, 1988, 1989, and 1990, as follows:

| Tax year ended | Deficiency | Additions to Tax | | | |
|---|---|---|---|---|---|
| | | Sec. 6651(a) | Secs. 6653(a)(1)(A)/ 6653(a) | Sec. 6653(a)(1)(B) | Sec. 6661(a) |
| 1/31/88 | $145,156 | $36,289 | $7,258 | [1] | $36,289 |
| 1/31/89 | 289,298 | 72,325 | 14,465 | -0- | 72,325 |

[1] Plus 50% of the interest that is computed on $145,156 for the taxable year ended Jan. 31, 1988, at the time of assessment and/or payment of tax.

| Tax year ended | Deficiency | Addition to Tax Sec. 6651(a) | Penalty Sec. 6662(a) |
|---|---|---|---|
| 1/31/90 | $490,772 | $122,693 | $98,154 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Some of the issues raised by the pleadings have been disposed of by agreement of the parties (including all issues pertaining to the taxable year ended January 31, 1988 (fiscal year 1988)), leaving for decision the amount of customs duties, freight charges, and related fees paid by petitioner with respect to its goods purchased for sale during each of the years here in issue, which, when added to the agreed cost of purchases other than these charges, results in cost of the goods purchased. The parties agree as to whether the additions to tax and penalty apply to petitioner and that the amount of such additions to tax and penalty will be computed under Rule 155.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner Apollo Overseas International, Inc., is a California corporation with its principal place of business in Santa Fe Springs, California, at the time of the filing of the petition in this case. Petitioner filed a Federal income tax return for each of its taxable years ending January 31, 1988, 1989, and 1990 with the Internal Revenue Service Center in Fresno, California.

Petitioner was engaged in the business of importing clothing (garments) and cloth badges (badges) manufactured in Taiwan and reselling them as a wholesaler to retailers in the United States. Petitioner commenced this business in 1987.

Ms. Michelle Chiou (Ms. Chiou) was petitioner's president and chief executive officer during the years here in issue. Prior to the taxable year ending January 31, 1990 (fiscal year 1990), Ms. Chiou was petitioner's only employee. During its fiscal year 1990, petitioner had one other employee. Petitioner's stock was owned half by Ms. Chiou and half by Alan Chih-Kuo Tai.

Petitioner purchased garments from a number of suppliers in Taiwan, one of which was Apollo Free Industrial Co., Ltd. (Taiwan), a corporation formed under the laws of Taiwan (Apollo

Taiwan).  Apollo Taiwan was owned by Ms. Chiou's father, Chiou Wan-I.

For its fiscal year ending January 31, 1989 (fiscal year 1989), petitioner's gross sales of badges were $734,744 and its cost of goods sold for these badges (excluding customs duties and freight charges (CDFC)) was $566,176.  For its fiscal year 1989, petitioner's opening garment inventory was $171,762, plus CDFC in the amount of $27,908.  For that same year, gross sales of garments was $3,713,466, which is composed of $1,398,151 in documented sales, $1,397,100 in deemed sales, and $918,216 in imputed sales.[1]  The above gross sales of garments is reduced by $163,571 for damaged or missing imported goods.  For its fiscal year 1989, petitioner's garment purchases were $2,847,202, which is composed of $2,650,012 in documented purchases[2] and $197,190[3] in imputed purchases.  Petitioner's closing garment inventory for

---

[1]  "Documented sales" represent garment sales, the sales invoices for which can be matched with items in opening inventory or items purchased during the year.  "Deemed sales" are those garment sales for which there are sales invoices but no matching purchase invoices.  "Imputed sales" are those garment sales of items that were either included in opening inventory or purchased during the year and did not appear in ending inventory, but for which there are not complete matching sales invoices.

[2]  The sum of the purchase invoices for the fiscal year 1989 is $2,643,519.36.  The parties disagree as to why this number does not equal the amount in the stipulation, but both parties apparently have agreed to use the number in the stipulation as shown by this finding, despite the mathematical error.

[3]  Though the stipulation lists this figure as $107,190, both parties have stated on brief that the correct figure is $197,190.

its fiscal year 1989 was $311,452. Petitioner's cost of goods sold for garments that year, excluding U.S. customs duties (customs duties), freight charges, and incidental fees was $2,707,512.

For its fiscal year 1990, petitioner's gross sales of badges was $1,425,185 and its cost of goods sold for badges (excluding CDFC) was $1,015,493. For its fiscal year 1990, petitioner's gross sales of garments was $6,289,071, which is composed of $3,554,018 in documented sales and $2,735,053 in imputed sales. The gross sales of garments is reduced by $2,476 for damaged or missing goods. For its fiscal year 1990, petitioner's opening garment inventory was $311,452. Garment purchases during that year were $4,488,898, which is comprised of $4,223,566 in documented purchases[4] and $265,332 in imputed purchases. Closing garment inventory was $219,232. Cost of goods sold for garments for petitioner's fiscal year 1990 (excluding CDFC) properly includable in inventory, was $4,581,118.

Mr. Roger Lee (Mr. Lee), the manager of Alexander Air Express, Inc. (Alexander Air), prepared the customs documents for petitioner during the years at issue. The shipping documents were sent with the shipment if the shipment was by air, and, if

[4] As in the computations for the taxable year ended Jan. 31, 1989, and as noted supra note 3, this figure does not represent the sum of invoices introduced as evidence for that year. As suggested by the parties, we find the amounts listed in the stipulation of facts are appropriate.

the shipment was by sea, the shipper would send the shipping documents to petitioner, and petitioner would provide these documents to Alexander Air. Alexander Air then determined the applicable U.S. customs duty rate for each item listed on each of the shipping documents based on the rates shown in the Harmonized Tariff Schedule of the United States, promulgated by the U.S. International Trade Commission (the Harmonized Tariff Schedule). Mr. Lee determined the amount of customs duty by applying the rate specified in the Harmonized Tariff Schedule for a specific classification of product to the various items listed on petitioner's purchase invoices for the years at issue.

The U.S. Customs Service (the Customs Service) inspected petitioner's documents and shipments infrequently during the years at issue. None of the few Customs Service inspections made of petitioner's goods and documents during the years here in issue resulted in changes in the amounts computed by Mr. Lee.

Customs duty rates applicable to imported items depend on such variables as the type of fabric (e.g., knit versus woven), the use of the garment (e.g., undergarment versus outergarment), the country of origin, and the fabric composition (e.g., manmade fiber versus all cotton versus cotton-polyester blend).

The freight charge made by Alexander Air for shipment of goods to petitioner was based on volume, expressed in cubic meters.

Petitioner paid the invoices rendered by Alexander Air, including freight charges and customs duties within 2 weeks to 1 month. Petitioner never failed to pay any amount owed to Alexander Air, but on occasion, if Alexander Air was short of cash funds, petitioner would pay the amount of the customs duties directly to the Customs Service. Petitioner never paid customs duties in excess of amounts computed by Alexander Air and shown on the customs entry form.

Petitioner on its Federal income tax return for its fiscal year 1989 deducted $398,900 of "duty & custom service" and $33,318 for "freight & delivery". For its fiscal year 1990, petitioner deducted $630,135 for "duty & custom service" and $53,790 for "freight & delivery".

Respondent determined in her notice of deficiency that petitioner received gross receipts in the amounts of $1,189,925, $4,194,099, and $6,313,263 in lieu of $791,042, $3,739,433, and $4,681,229 reported on petitioner's tax returns for its fiscal years 1988, 1989, and 1990, respectively. Respondent also determined that petitioner's costs of goods sold were in the amounts of $757,582, $2,811,340, and $3,989,973, in lieu of $752,044, $3,194,122, and $3,804,065 reported on petitioner's tax returns for its fiscal years 1988, 1989, and 1990, respectively.

Respondent in the statutory notice made no adjustment to CDFC

claimed as deductions by petitioner for the years here in issue.[5]

OPINION

The issue in this case is purely factual. In the three

stipulations for trial, the parties have agreed to all but two

facts necessary for the computation of gross income from sales by

petitioner for its fiscal years 1989 and 1990. The issue on

which the parties disagree is the amount of customs duties,

freight charges, and other import fees properly includable in the

cost of purchases, and in opening and closing inventory for

petitioner's fiscal years 1989 and 1990. The parties agree that

customs duties paid by petitioner in each year, freight charges,

and other import fees paid by petitioner for delivery of the

---

[5] The parties have stipulated that petitioner is liable for a deficiency in income tax in the amount of $4,818 for its fiscal year 1988, and have further stipulated that petitioner is liable for additions to tax pursuant to secs. 6651, 6653(a), and 6661 for that year. The parties have also stipulated that for its fiscal year 1989, petitioner is not liable for an addition to tax under sec. 6651, but that petitioner will be subject to an addition to tax under sec. 6661 for its fiscal year 1989 if there is a substantial understatement of tax as defined in sec. 6661(b) for that year, and that petitioner is liable for an addition to tax under sec. 6653(a) if petitioner is liable for an addition to tax under sec. 6661. For its fiscal year 1990, the parties have stipulated that petitioner is liable for an addition to tax under sec. 6651, and that petitioner will be liable for an accuracy-related penalty under sec. 6662(a) if petitioner would have had a substantial understatement of income tax as defined in sec. 6661(b), had sec. 6661 still been in effect.

The parties have also stipulated that the purchase and sale of garments and badges is an income-producing factor within the meaning of sec. 1.446-1(a)(4), Income Tax Regs.

goods it purchased, are either a part of the cost of those purchases, which increases the costs of goods sold and the value on a cost basis of opening and closing inventories, or are separately deductible items. The parties further agree to consider those costs as a part of the cost of goods sold (purchases) during each year and a part of the value on a cost basis of goods in opening and closing inventories. If petitioner's books and records were sufficient to clearly show the amounts of these items, there would be no issue. However, because of the inadequacy of petitioner's books and records, the amounts of these items must be reconstructed. The parties differ as to how this reconstruction should be accomplished. Additions to tax and a penalty, if any, will be determined based on the income resulting from the proper amount of customs duties and freight charges to be included in cost of goods sold for each of the years at issue.

The parties have agreed to make adjustments to customs duties and freight charges by using the following method. Customs duties and freight charges for garments shall be the sum of the customs duties and freight charges for purchases as shown on the purchase invoices that correspond to documented sales or are used to determine imputed sales. Customs duties and freight charges for imputed purchases are to be at the duty rate and freight cost applicable to the identical garment on which the imputed purchase is based. Whether for garments or badges, the

parties have agreed that the following rules apply: (1) Customs duties and freight charges must be computed at the rates actually in effect for the year involved, and (2) because customs duties and freight charges are to be included in cost of purchases and of goods in inventory, petitioner shall not be entitled to claim these items as deductions.

For petitioner's fiscal year 1989, respondent and petitioner disagree as to how customs duties should be calculated with respect to documented sales. Petitioner contends that these amounts should be determined by multiplying the amount of the sales invoices provided in the record by the customs duty rate as determined by petitioner's application on brief of the Harmonized Tariff Schedule. Petitioner argues that these amounts result from the method used by Mr. Lee, petitioner's customs agent, during the years at issue, and the only witness who testified in this case as to hypothetical examples. Respondent argues that for those sales that are documented, the appropriate customs duty rate should be determined by examining the customs rate as calculated by Mr. Lee at the time the customs duties were paid by matching documented sales with corresponding customs invoices. Petitioner essentially ignores the customs invoices.

After examining both petitioner's and respondent's calculations, we conclude that respondent's method is a more appropriate approximation of applicable customs duties with respect to documented sales. We recognize possible

inconsistencies in respondent's calculation, notably that seemingly identical shipments are assigned substantially different customs duties. However, the fact that the amount of customs duties arrived at by petitioner's calculations is much greater than either the amount reported on petitioner's returns, or the amount calculated by Mr. Lee at the time the invoices were prepared, indicates that petitioner's method of calculating the appropriate customs duties overstates customs duties. On brief, petitioner calculated that the total customs duties for its fiscal years 1989 and 1990 were $792,121.09 and $1,194,213.13, respectively. However, petitioner deducted on its Federal income tax returns only $398,900 and $630,135, respectively, for its fiscal years 1989 and 1990 for customs duties for both garments and badges.

We are convinced that the purchase invoices were properly matched by respondent to the corresponding customs invoices. Therefore, the numbers on the customs invoices represent the calculations made by Mr. Lee at the time the garments were shipped. It was these amounts that petitioner actually paid as customs duties with respect to the documented sales for which the record permits a matching with customs duties invoices. These are the amounts properly includable in petitioner's cost of goods purchased or inventories as customs duties costs.

There is some evidence in the record to indicate that not all items were subject to customs duties that may explain some of

the disparity in petitioner's and respondent's calculations. The correctly matched invoices, as heretofore noted, represent amounts actually paid by petitioner. Mr. Lee testified that petitioner never paid customs duties in excess of the amount on the duty form. The fact that these amounts represented accurate customs duties is supported by Mr. Lee's testimony that the Customs Service, during the years here in issue, never disapproved the duty charges as computed by Mr. Lee. Based on all of this evidence, we adopt respondent's calculations for the customs duties on documented sales on those items on which the duty charges can be matched with the correct invoices for garment sales with regard to the 1989 fiscal year.

Respondent could not match the deemed sales with customs invoices. Respondent applied the lowest applicable rate from the matched duty charges to arrive at the amount she considered appropriate customs duties for deemed sales. Respondent applied the following rates:[6]

| Garment | Percentage |
| --- | --- |
| Mens T/R/C jeans | 14.17% |
| Boys T/R/C jeans | 14.05 |
| Mens 100% acrylic sweater | 11.86 |
| Ladies 100% cotton jeans | 11.86 |
| Ladies T/R/C jeans | 16.46 |
| Boys/kids 100% cotton jeans | 11.86 |

---

[6] Respondent discarded two purchase invoices in her calculation because the duty rates were .22% and 48.43%, which were in amounts outside the normal range of other invoices.

Petitioner has applied the Harmonized Tariff Schedule rates to deemed sales to calculate the appropriate percentage. Petitioner states that this computation is based on the testimony of Mr. Lee. Examples of these rates are as follows:

| Garment | Percentage |
|---|---|
| 100% cotton jeans | 17.7% |
| T/C jeans with PVC belt | 29.7 |
| Men's T/R/C 39% polyester, 24% rayon, 37% cotton woven jeans | 29.7 |
| Men's T/C shorts, 65% polyester, 35% cotton | 29.7 |
| Men's T/R/C jeans | 29.7 |
| Boy's 100% acrylic sweater | 34.2 |

After an examination of the purchase invoices and customs invoices in this case, it is clear that neither method appropriately estimates the customs duties applicable to those purchase invoices that cannot be matched with customs invoices. Many of the purchase invoices list multiple garments that makes it inappropriate to use those invoices to determine the rates of customs duties for the items in deemed sales. Petitioner's method as to deemed sales is unreliable for the same reasons it is with respect to documented sales. An analysis of the 63 purchase invoices reveals 3 invoices that list only "Mens T/R/C jeans", and 1 invoice which lists "Boys T/R/C jeans". The invoices for men's jeans provide rates as follows:

| Invoice date | Purchase price | Duty Charge | Rate |
|---|---|---|---|
| 3/19/88 | $44,800 | $11,816.04 | 26.38% |
| 4/02/88 | 33,232 | 5,150.81 | 15.50 |
| 4/30/88 | 52,987 | 7,510.20 | 14.17 |
| Total | 131,019 | 24,477.01 | 18.68 |

The 3 invoices that list only "Mens T/R/C jeans" show an average customs duty rate of 18.68 percent. The sole invoice that listed only boy's T/R/C jeans, invoice dated June 25, 1988, shows a customs duty rate of 17.87 percent. For those items that cannot be matched with duty charges, we hold that the rate for men's T/R/C jeans is 18.68 percent, and the rate for boy's T/R/C jeans is 17.87 percent. For the remaining invoices, including invoices with multiple garments, we hold that the appropriate duty rate is 17 percent, based on approximations from various invoices. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).

Based on the calculations for both documented sales and deemed sales, we hold that petitioner is entitled to a customs duty rate of 17 percent for imputed sales.

Respondent maintains that petitioner is entitled to no inclusion as part of cost of goods sold or deductions for customs duties and charges with respect to badges. Respondent contends that there is no evidence in the record to indicate that petitioner incurred any customs duties whatsoever for its badge sales, relying primarily on the testimony of Mr. Lee that some items were "duty free". Petitioner relies on one invoice

subsequent to the years at issue to show that the badges sold were subject to customs duties and freight charges. Petitioner further relies on the Harmonized Tariff Schedule to determine the applicable percentages for badge sales.

The evidence shows that petitioner imported cloth badges from Taiwan. The evidence further shows the amount of gross sales and cost of goods sold other than customs duties, freight charges, and other fees for the badges. It is also evident that customs duties were charged to badge shipments in years after the years here in issue. From this evidence, and relying somewhat on the testimony of Mr. Lee, we conclude that customs duties and freight charges were paid with respect to badges during the years at issue. Petitioner contends, as with the garment sales, that we simply multiply the sales price of the badges by the rate shown on the Harmonized Tariff Schedule. Since there are two rates that petitioner contends could be applicable from the Harmonized Tariff Schedule, 8.4 percent for 100-percent rayon woven embroidered badges with visible ground, or 16 percent for 100-percent rayon woven embroidered badges without visible ground, petitioner has applied an average rate of 12.2 percent, which calculates to customs duties allowable of $69,073.47 and $123,890.14, for its fiscal years 1989 and 1990, respectively. However, petitioner deducted on its tax returns only $33,318 and $53,790 for freight and delivery of badges for its fiscal years 1989 and 1990, respectively. There is no separate deduction for

customs duties. Based on the evidence, we conclude that petitioner's method of determining customs duties for badges yields too high an amount. The Harmonized Tariff Schedule showed percentages for customs duties for badges that were substantially lower than percentages for garment sales. Based on the limited evidence before us, we conclude that petitioner is entitled to a 4-percent customs duty for badges in 1989.

Respondent has allowed freight charges for petitioner's fiscal year 1989 as shown for those shipments on invoices that can be properly matched. For the invoices that cannot be matched, respondent has credited petitioner with freight charges of only the $65 entry service fee, on the basis that the other fees and charges varied widely.

Petitioner contends that a much higher amount for freight charges is appropriate. Relying on an invoice from a later year, petitioner contends that freight charges should equal 5.4 percent of the value of the shipments for the years here in issue. Petitioner argues that total freight charges allowed for the fiscal year 1989 should be $184,322.41. In addition, petitioner maintains that it should be allowed to claim a formal entry fee of $65 per shipment as part of cost of goods sold, as well as a merchandise processing fee charged by the Customs Service in the amount of .17 percent of the value of the merchandise. Finally, petitioner contends that it should be allowed to claim the formal

surcharge fee charged by the Customs Service of $3 per shipment, for a total of $196,721.15.

For documented sales, we allow petitioner freight charges as shown on the matched customs invoices and as determined by respondent. For those sales that are not documented, we hold that petitioner is entitled to both the $65 customs entry service fee and the $3 formal surcharge fee charged by the Customs Service. There is no evidence for us to conclude, as petitioner contends, that the freight charges for the one shipment in 1990 upon which petitioner relies should be the basis for imputing freight charges to the shipments for the years before us. This is particularly evident in light of the variation in the percentage of freight charges for those purchases that can be matched with the appropriate customs invoices. The following is a list of those purchase invoices and customs invoices that respondent could match and the corresponding percentage of freight charges, including all fees:[7]

---

[7] This table does not include invoices dated June 23, 1988, and Sept. 19, 1988, because the freight charges on these invoices were well outside the normal range (15.49% and .09%). These are the same invoices mentioned supra note 6.

| Shipment date | Total purchase price | Freight Charge | Percent |
|---|---|---|---|
| 2/6/88 | $53,416.00 | $1,647.33 | 3.08% |
| 2/26-27/88 | 72,670.00 | 1,815.00 | 2.50 |
| 3/19/88 | 44,800.00 | 1,880.00 | 4.20 |
| 3/26/88 | 80,345.36 | 1,840.00 | 2.29 |
| 4/2/88 | 33,232.00 | 883.28 | 2.66 |
| 4/9/88 | 53,507.20 | 1,632.33 | 3.05 |
| 4/30/88 | 52,987.00 | 1,270.10 | 2.40 |
| 5/14/88 | 83,116.00 | 2,228.00 | 2.68 |
| 5/30/88 | 81,807.36 | 2,325.00 | 2.84 |
| 6/4/88 | 61,866.30 | 1,326.65 | 2.14 |
| 6/25/88 | 81,915.60 | 1,298.10 | 1.58 |
| 7/16/88 | 149,104.96 | 2,376.00 | 1.59 |
| 7/30/88 | 17,240.40 | 554.58 | 3.22 |
| 8/6/88 | 145,539.80 | 3,129.50 | 2.15 |
| 8/19-20/88 | 93,106.25 | 2,033.00 | 2.18 |
| 8/27/88 | 72,730.50 | 1,675.00 | 2.30 |
| 8/27-9/3/88 | 63,720.60 | 1,530.50 | 2.40 |
| 10/1/88 | 94,337.30 | 3,095.50 | 3.28 |
| 10/8/88 | 29,373.30 | 1,201.00 | 4.09 |
| 10/15/88 | 104,538.00 | 1,975.00 | 1.89 |
| 10/22/88 | 105,118.00 | 2,032.00 | 1.93 |
| 11/5-11/88 | 98,051.10 | 3,640.00 | 3.71 |
| 11/19/88 | 119,324.56 | 3,579.50 | 3.00 |
| 11/26/88 | 128,622.78 | 3,645.00 | 2.83 |
| Total | 1,920,470.37 | 48,612.37 | 2.53 |

As is evident from the table, nearly all of these invoices show freight charges of between 1.5 and 3.5 percent of the total purchase price. On average, the ratio of freight charges to purchase price was 2.53 percent. For both deemed and imputed sales, we allow 2 percent of the total purchase price of the shipments for these items, taking into account that we have already allowed the customs entry service fee and the formal surcharge fee. The freight charges were computed on the volume of the shipment and not its value. However, there is no basis in

this record other than a percent of value on which to estimate the freight charges.

For the fiscal year 1990, there are no customs invoices from Alexander Air that match purchase invoices to determine the appropriate customs duties for either garments or badges. There are only purchase invoices for that year. For 1990, respondent has applied to each garment imported the lowest effective duty rate that respondent calculated from 1989 that applied to the same type item. For freight and import charges, respondent applied a ratio of 1.99 percent. Respondent allowed no amount for customs duties for badges for petitioner's fiscal year 1990. Petitioner applied the same method for each category of items for its fiscal year 1990 that it applied for its fiscal year 1989. The record suggests that customs duties and freight charges were the same for the same item for petitioner's fiscal year 1990 as for its fiscal year 1989. We, therefore, conclude that the percentages for petitioner's fiscal year 1990 would not be substantially different from those for its fiscal year 1989. We hold that petitioner is entitled to a 17-percent customs duty charge for all garments and a 4-percent customs duty charge for badges for its fiscal year 1990. We hold that petitioner's freight charges fees for its fiscal year 1990 were the same as for its fiscal year 1989, and that its freight charges for its fiscal year 1990 were 2 percent of the total purchase price, which is the same as for its fiscal year 1989.

Petitioner devotes much of its brief to argument that it is being penalized because of its lack of adequate records. However, the duty is on petitioner to maintain adequate records and, in determining items affecting its income tax, the lack of such records should weigh heavily against petitioner. Petitioner's computations in lieu of its records do not comport with facts in the record or with reason. We have determined amounts we consider very reasonable for customs duties, freight, and other fees with respect to petitioner's sales in the years here in issue based on the facts in this record. We consider these amounts to represent reasonably the amounts paid by petitioner in each year. However, the fact that it was necessary to reconstruct the amounts paid by petitioner for customs duties, freight charges, and other fees is due to petitioner's failure to keep adequate records as required by statute.

Decision will be entered
under Rule 155.